# 24-224(L), 24-1424 (CON)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

- against -

QAWON ALLEN a/k/a 40 a/k/a Phorty Wap, DESMONN BECKETT
a/k/a Des, DEVON BRISTOL a/k/a D, MARLON BRISTOL a/k/a Marlo,
ANDREW CAMPBELL a/k/a Phaze,

Defendants,

TYSHAWN CORBETT a/k/a Reck, QUANDEL SMOTHERS a/k/a Clucky,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK (HON. KIYO A. MATSUMOTO)

## BRIEF FOR DEFENDANT-APPELLANT TYSHAWN CORBETT

EDELSTEIN & GROSSMAN
*Attorney for Defendant-Appellant*
501 Fifth Avenue, Suite 514
New York, NY 10017
(212) 871-0571
*Of Counsel: Jonathan I. Edelstein*

## **TABLE OF CONTENTS**

Table of Authorities ................................................................... iii

Statement of Subject Matter and Appellate Jurisdiction ........................................... 1

Statement of the Issues Presented ........................................... 1

Statement of the Case…. ........................................... 2

Summary of the Argument ........................................... 22

Argument…………… ........................................... 24

    POINT I

    CORBETT WAS NOT REQUIRED TO WITHDRAW HIS
    PLEA IN ORDER TO INVOKE HIS RIGHT NOT TO BE
    PUNISHED ON A TIME-BARRED COUNT ........................................... 24

        A.    18 U.S.C. § 3282 Gives Corbett an Independent
            Right Not to be Punished on Count Four ........................................... 25

        B.    Corbett's Guilty Plea Did Not Waive His Statute
            of Limitations Objection to Count Four ........................................... 29

    POINT II

    THE HARSH 45-YEAR SENTENCE IMPOSED BY THE
    DISTRICT COURT WAS BOTH PROCEDURALLY AND
    SUBSTANTIVELY UNREASONABLE ........................................... 33

        A.    Applicable Law and Standard of Review ........................................... 34

        B.    The Sentence Is Procedurally Unreasonable ........................................... 37

        C.    The Sentence Is Substantively Unreasonable ........................................... 44

Conclusion………… ........................................... 49

i

Certificate of Compliance ........................................................50

Judgment Appealed From…………….......................................Addendum

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

<u>Canada v. Gonzales</u>, 448 F.3d 560 (2d Cir. 2006) ...................................26

<u>Caputo v. Pfizer, Inc. v. Pfizer, Inc.</u>, 267 F.3d 181 (2d Cir. 2001) .........................26

<u>Continental Ins. Co. v. Atlantic Cas. Ins. Co.</u>, 603 F.3d 169 (2d Cir. 2010) ..........26

<u>Duncan v. Walker</u>, 533 U.S. 167 (2001) .....................................................26

<u>Gall v. United States</u>, 128 S. Ct. 586 (2007) ...........................................34,37

<u>Ginns v. Towle</u>, 361 F.2d 798 (2d Cir. 1966).............................................42

<u>Irizarry v. United States</u>, 553 U.S. 708 (2008) ......................................43,44

<u>Kimbrough v. United States</u>, 128 S. Ct. 558 (2007)...................................37

<u>Singer v. United States</u>, 323 U.S. 338 (1945)...........................................26

<u>People v. Rodriguez</u>, 106 N.E.3d 436 (Ill. App. 2018) .........................47n

<u>Toussie v. United States</u>, 397 U.S. 112 (1970)................................23,27,28

<u>United States v. Adams</u>, 955 F.3d 238 (2d Cir. 2020).........................31,32

<u>United States v. Amirouche</u>, 743 F. Supp. 3d 110 (E.D.N.Y. 2024).......................32

<u>United States v. Anderson</u>, 15 F.3d 278 (2d Cir. 1994) ...........................26

<u>United States v. Baker</u>, 254 Fed. App'x 73(2d Cir. 2007) .....................35

<u>United States v. Bjorkman</u>, 270 F.3d 482 (7th Cir. 2001)........................31

<u>United States v. Booker</u>, 543 U.S. 220 (2005) ....................................34,35

<u>United States v. Broce</u>, 488 U.S. 563 (1989).......................................31,32

United States v. Bruno, 383 F.3d 65 (2d Cir. 2004) ................................................46

United States v. Caputo, 978 F.2d 972 (7th Cir.1992) ...........................................33

United States v. Cavera, 550 F.3d 180 (2d Cir. 2007)....................................35,36,37

United States v. Cirilo-Munoz, 504 F.3d 106 (1st Cir. 2007) ................................37

United States v. Coffin, 76 F.3d 494 (2d Cir. 1996) ...............................................31

United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) ............................................35

United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010) ............................................48

United States v. Farmer, 583 F.3d 131 (2d Cir. 2009) ...........................................46

United States v. Ferguson, 246 F.3d 129 (2d Cir. 2001) .........................................46

United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006) .........................................36

United States v. Fletcher, 134 F.4th 708 (2d Cir. 2025),..........................................43

United States v. Gagliardi, 506 F.3d 140 (2d Cir. 2007)........................................25

United States v. Gonzalez, 529 F.3d 94 (2d Cir. 2008).........................................35

United States v. Hsu, 689 F.3d 112 (2d Cir. 2012) ...............................................28n

United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006)...............................36

United States v. Labbe, 588 F.3d 139 (2d Cir. 2009)..............................................42

United States v. Lutchman, 910 F.3d 33 (2d Cir. 2018).........................................30

United States v. Pepin, 514 F.3d 193 (2d Cir. 2008).............................................47n

United States v. Polanco, 145 F.3d 536 (2d Cir. 1998)...........................................46

United States v. Rattoballi, 452 F.3d 127 (2d Cir. 2006) ...................................35,36

iv

United States v. Ready, 82 F.3d 551 (2d Cir. 1996)............................................29,30

United States v. Rigas, 583 F.3d 108 (2d Cir. 2009)...............................................44

United States v. Riggi, 649 F.3d 143 (2d Cir. 2011)...............................................30

United States v. Sanchez, 517 F.3d 651 (2d Cir. 2008)................................34,35,37

United States v. Sanchez-Juarez, 446 F.3d 1109 (10th Cir. 2006)..........................36

United States v. Sindima, 488 F.3d 81 (2d Cir. 2007)..............................................41

United States v. Stewart, 590 F.3d 93 (2d Cir. 2009)..............................................36

United States v. Taveras, 436 F.Supp.2d 493 (E.D.N.Y.2006)...........................47n

United States v. Thai, 29 F.3d 785 (2d Cir. 1994)...................................................46

United States v. Vrancea, 606 Fed. App'x 21 (2d Cir. 2015)..................................41

United States v. Walsh, 700 F.2d 846 (2d Cir. 1983)..............................................28

United States v. Ware, 577 F.3d 442 (2d Cir. 2009) .....................................35,37,40

United States v. Wilson, 920 F.3d 155 (2d Cir. 2019) ............................................32

United States ex. rel. Glenn v. McMahon, 349 F.2d 1018 (2d Cir. 1965) .............31

**Statutes and Rules:**

18 U.S.C. § 924.......................................................................1,5,6,19n,25,
...............................................................................................................39

18 U.S.C. § 1959 .........................................................................................5

18 U.S.C. § 1962 .........................................................................................4

18 U.S.C. § 2261A .......................................................................................6

18 U.S.C. § 3282 ...................................................................1,15,23,24,25
.......................................................................................26,27,28,33

18 U.S.C. § 3553 .................................................................15,19,20,22,
.......................................................................................34,35,37,43,
.........................................................................................................48

18 U.S.C. § 3632 .............................................................................19n

18 U.S.C. § 3661 ..............................................................................22

18 U.S.C. § 3732 ................................................................................1

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1331 ................................................................................1

Fed. R. Crim. Pro. 11 ..................................................................7,19,42

Second Circuit Rule 30.1 ..................................................................3n

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Defendant-Appellant Tyshawn Corbett, by and through the undersigned counsel, respectfully submits this brief in support of his appeal from a judgment of the United States District Court for the Eastern District of New York (Hon. Kiyo A. Matsumoto, J.), entered upon his plea of guilty, adjudging Corbett guilty of three counts of using, carrying and possessing a firearm in connection with a crime of violence (18 U.S.C. § 924(c)(1)(A)(iii)) and sentencing him principally to an aggregate prison term of 45 years.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Corbett's appeal is as of right.

## STATEMENT OF THE ISSUES PRESENTED

1.    Does 18 U.S.C. § 3282(a) confer an independent right not to be punished for a time-barred offense which is separate and apart from the right not to be convicted of that offense, and did the plain terms of Corbett's plea agreement reserve to him the right to object to being so punished for a count that was indisputably time-barred on the date of the indictment and the plea agreement?

2.    Was the 45-year sentence imposed by the district court, which drastically exceeded both the 30-year advisory Guideline range and the government's recommendation of 35 years, procedurally and/or substantively

1

unreasonable?

Defendant-Appellant submits that the answer to both questions is "yes."

## STATEMENT OF THE CASE

Defendant-appellant Tyshawn Corbett appeals the judgment in case number 20-cr-213 in the Eastern District of New York, over which the Honorable Kiyo A. Matsumoto presided.

Mr. Corbett is a 34-year-old citizen of the United States and father to two minor children. (Presentence Investigation Report ("PSR") at 2. Prior to the indictment in this case, Mr. Corbett had never been charged, much less convicted, of any violent conduct toward another individual. (PSR at 11–18.)

On June 18, 2020, however, Mr. Corbett and six codefendants were charged in a 20-count indictment concerning the activities of an alleged racketeering enterprise, the Elite Assassin Millas ("E.A.M."), between 2006 and 2020. (A 30 ff.) Notwithstanding the 15-year timeframe charged in the indictment, the earliest date that the PSR identifies for any criminal conduct specifically involving Mr. Corbett in this case is April 21, 2015. (PSR at 6.)

That April 21, 2015 date is significant as it represents approximately one month after a traumatic event in Mr. Corbett's life: the March 25, 2015 slaying by Michael Tenorio of Mr. Corbett's closest childhood friend, Jonathan Thomas, who had been akin to a brother for Mr. Corbett. (PSR at 6.) As Thomas's mother

2

explained in an August 3, 2023 letter to the district court, which was filed as an attachment to Mr. Corbett's January 11, 2024 supplemental sentencing memorandum, Thomas was "cruelly murdered on the street outside our home":

> He was killed in an unprovoked attack. He was only 24 years old at the very beginning of his life as an adult. I was told by a New York City detective at the 75th Precinct that Jonathan was killed by Michael Tenorio.
>
> [. . .]
>
> For many years Jonathan had a very close friendship with Tyshawn Corbett. They met as school friends and were inseparable growing up. They were like brothers. Tyshawn was particularly devastated by the senseless death of his close friend, Jonathan.

(Dist. Ct. Docket No. 398.) At sentencing, Mr. Corbett would describe the sense of hopeless fatalism that overcame him in the wake of his best friend's murder:

> when I lost my best friend, it's just like there's nothing else I could have — when I lost my best friend it's like I feel like there was nothing I could have done. Because if it would have been me, they would've did it to me. So I thought there was nothing else I could do. The police, nobody could help me. So I thought it was the right thing to do, but being in jail now and seeing all this time, understanding all of that was wrong. Everything was wrong, but so I could have done.

(A 150.)[1]

---

[1] Citations to "A" refer to the Appendix filed by the previously-assigned counsel, Daniel S. Nooter, Esq. (ECF Doc. 26). Certain documents from the court below are cited by ECF docket number as permitted in CJA cases by Second Circuit Rule 30.1(e)(1)(A). The judgment appealed from is annexed as an addendum.

What Mr. Corbett did do, however, was to seek vengeance for his best friend's murder. Thus, the PSR describes that on April 21, 2015, "Corbett shot and killed Michael Tenorio in the East New York section of Brooklyn, because Tenorio was believed to have shot and killed Thomas." (PSR at 6.)

And unfortunately, that did not end the matter, because Corbett learned that Thomas's murder had been ordered by another individual referred to throughout the indictment and the proceedings below as John Doe #1 (hereinafter, "JD1"). Thus, the PSR explains that Corbett shot JD1 on March 7, 2016, but that JD1 survived the shooting. (PSR at 6.) As described in the PSR, Corbett made renewed attempts to avenge his friend against JD1 during the first part of 2018, coordinating with other members of E.A.M. to track JD1 using a GPS device placed on his car. (PSR at 6–7.) The PSR states that on June 28, 2018, Mr. Corbett located JD1 in a hotel parking lot in the Jamaica section of Queens, where he shot JD1 multiple times while JD1 was in a parked car. (PSR at 7.) JD1 survived the shooting but was left paralyzed. (PSR at 7.)

Mr. Corbett was charged in the first 15 counts of a 20-count indictment. (A 33–41.) Count One charges Mr. Corbett and four of his codefendants with conspiring to engage in racketeering activities, including murder, fraud, and narcotics trafficking, in violation of 18 U.S.C. § 1962(d). (A 33–34.) Count Two charged Mr. Corbett with possessing a firearm in connection with a drug trafficking

4

crime, i.e., the RICO conspiracy charged in Count One. (A 34.) Fully eleven of the thirteen remaining charges against Mr. Corbett, however, present alternative theories of liability for the Tenorio shooting and the two shootings involving JD1.

The April 21, 2015 Tenorio shooting provides the basis for the allegations in Counts Three through Five of the indictment, which charge Mr. Corbett, respectively, with murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and causing death through the use of a firearm, in violation of 18 U.S.C. § 924(j). (A 35–36.)

The shootings involving JD1 on March 7, 2016, and June 28, 2018, together account for eight of the fifteen total charges against Mr. Corbett. Counts Six and Seven related to the initial, 2016 shooting and charge Mr. Corbett with attempted murder in aid of racketeering and assault in aid of racketeering, respectively. (A 37.) Count Eight adds an allegation of discharging a firearm in connection with these offenses, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (A 38.) An additional five counts in the indictment arise from the June 28, 2018 shooting. Counts Thirteen and Fourteen mirror Counts Six and Seven in charging Mr. Corbett with both attempted murder in aid of racketeering and assault in aid of racketeering, while Count Nine adds an inchoate charge of conspiring to commit murder in aid of racketeering. (A 38, 40–41.) Count Ten charges Mr. Corbett with using     electronic devices in

interstate commerce to stalk JD1 in the months leading up to the June 28 shooting, in violation of 18 U.S.C. § 2261A; while Count Fifteen adds an additional § 924(c)(1)(A)(iii) count for discharging the firearm. (A 39, 41.)

The final two counts — Eleven and Twelve — are not implicated in the offenses of conviction in this appeal. These charges involved an additional count of attempted murder in aid of racketeering and an additional count of discharging a firearm in connection with a crime of violence, arising from an alleged June 10, 2018 altercation between Mr. Corbett and an individual identified in the indictment as John Doe #2 ("JD2"). (A 39–40.) The PSR explains that Corbett and JD2 engaged in a fistfight and that "A short time later, shots were fired from two separate firearms, but no one was shot." (PSR at 8.)

Thus, while the indictment alleges as many as 15 separate counts against Mr. Corbett, these counts largely arise from just four specific allegations of violent conduct as identified in the indictment and the PSR, in which two individuals — the two who had murdered Mr. Corbett's friend — were actually shot by Corbett.

In a plea agreement executed September 6, 2022, Mr. Corbett agreed to plead guilty to Counts Four, Eight, and Fifteen. (A 47.) Each of these counts alleges that Mr. Corbett discharged a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The three counts concern (respectively) the April 21, 2015 shooting of Tenorio; the March 7, 2016 initial shooting of JD1; and the

6

June 28, 2018 second shooting of JD1. (A 48.) The plea agreement included an estimated Guidelines range of 30 years' incarceration. (A 49.) In exchange for Mr. Corbett's plea to these three counts, the government agreed to dismiss the remaining 12 counts. (A 50–51.)

Pursuant to Rule 11(c)(1)(B), the government, in consideration for a defendant's guilty plea, may agree to "recommend . . . that a particular sentence or sentencing range is appropriate." See Fed. R. Crim. P. 11(c)(1)(B). Here, in addition to agreeing to dismiss the 12 remaining counts in the indictment, the government agreed in accordance with Rule 11(c)(1)(B) not to seek a sentence above 35 years' imprisonment. (A 51.) That 35-year disposition was also reflected in the plea agreement's appeal-waiver provision, under the terms of which Mr. Corbett agreed not to appeal or collaterally attack the conviction or sentence if Mr. Corbett were sentenced to 420 months [35 years] or below. (A 49.)

The only reference in the plea agreement to any applicable statute of limitations pertains to the hypothetical circumstance where the plea is breached or withdrawn or the conviction is otherwise vacated:

> The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.

(A 49; emphasis added.) As the emphasized language indicates, however, even were

7

this provision triggered by one of the three enumerated situations, the statute-of-limitations waiver nevertheless applies only to prosecutions that were not already time-barred as of the date of the agreement: prosecutions already time-barred remain so. An integration clause at the conclusion of the plea agreement specifies that "no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties." (A 52.) The plea agreement additionally explains that it "supersedes all prior promises, agreements or conditions between the parties." (A 53.)

A change-of-plea hearing was held on September 6, 2022. (A 54 ff.) Two aspects of that hearing are relevant to the issues in the instant appeal.

First, although the district court conducted a full colloquy pursuant to Fed. R. Crim. P. 11(b), purporting to inform Mr. Corbett about each of the rights he would be waiving by pleading guilty, that colloquy included no mention of any statute of limitations rights Mr. Corbett might be waiving by pleading guilty. (A 59–68.)

Second, during the section of the hearing during which Mr. Corbett was asked to recite the factual basis for the plea, Mr. Corbett explicitly denied the government's assertion that he had shot Tenorio and JD1 with the specific intent of furthering the racketeering conspiracy charged in Count One of the indictment. (A 76–89.) Rather, Mr. Corbett maintained that that his motive for the shootings had

8

simply been to avenge the murder of his best friend, Jonathan Thomas: "I shot and killed Michael Tenorio because he killed my best friend." (A 77.) In response, the government asserted that "Part of Mr. Corbett's reason for committing this crime was to maintain or increase his position with E.A.M.," and asked Mr. Corbett to stipulate to this assertion. (A 78.) But Mr. Corbett was steadfast that his motive behind the shooting was unrelated to gaining status within E.A.M.:

> THE COURT: And do you agree that the government could prove that you were part of a group or criminal group called E.A.M.?
>
> THE DEFENDANT: Your Honor, I don't know what the government can prove, but I know that I didn't kill this guy for no gang or furtherance of no gang.
>
> THE COURT: Well, did you kill him because he — did you do this in order to protect the — your group of friends or associates and their activity?
>
> THE DEFENDANT: No.

(A 78.) Only following an off-the-record discussion with plea counsel did Mr. Corbett agree to stipulate to the government's assertion regarding the motive for the Tenorio shooting. (A 79.)

The same issue recurred, however, regarding the factual bases for Counts Eight and Fifteen, i.e., the two shootings involving JD1. The government again argued that Mr. Corbett had specifically intended the shootings to be in aid of racketeering, asserting, "Part of E.A.M. is to use violence and retaliation against

9

enemies of the gang, and as part of that, in order to — because it was expected of him and in order to increase and maintain his position within the gang, Mr. Corbett engaged in the shooting that he described." (A 81–82.) Yet Mr. Corbett again disputed the government's characterization of the motives behind the shooting:

> THE COURT: Did you hear what the government said, Mr. Corbett?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And would you agree or stipulate to what the government said it would be able to prove at trial?
>
> THE DEFENDANT: Your Honor, can I ask you a question? THE COURT: Sure. Do you want to ask your lawyers first? THE DEFENDANT: No, no, I want to ask you.
>
> THE COURT: Okay.
>
> THE DEFENDANT: I want to know like I got to say that in order for this plea to go down, because if it didn't happen for the gang and stuff, I got to say that? Right? I'm pleading guilty, but is it that I have      to say that I pled guilty in — I shot this person because of some gang or to enhance my — increase my status in the gang if it didn't happen like that, I got to say that though?

(A 82.) A back-and-forth ensued between the government attorney and Mr. Corbett, in which the government argued that there could be more than one motivation for a shooting and in which Mr. Corbett continued to disagree with the government's theory of motive. (A 83–84.) The district court paused proceedings so that Mr. Corbett could again consult with plea counsel. (A 84.)

10

When the hearing resumed, the district court led Mr. Corbett through a colloquy in which headmitted that because he would have lost respect with E.A.M. had he not committed the shooting, a motive for the shooting had been to maintain his standing within that organization:

> THE COURT: All right. Sir, you were associated with a group known as E.A.M.; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And when you shot and attempted to murder John Doe Number 1, if you hadn't done that, would you have maintained the respect that you had within E.A.M. with people with which you're associated?
>
> THE DEFENDANT: Yes, Your Honor, all right.
>
> THE COURT: Pardon me?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: What do you mean "yes"?
>
> THE DEFENDANT: That it was — I would have made my — if I didn't do it like you said, if I didn't do it, I would — my respect, I would lose my respect with them.
>
> THE COURT: All right. So you were regarded in a certain way among your associates in E.A.M.; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And if you didn't shoot John Doe Number 1 and attempt to murder him with a gun, what you're saying, just let me — tell me yes or no, would your group or colleagues within E.A.M. have held you in the same regard or with the same degree of respect?

11

THE DEFENDANT: No.

THE COURT: Okay. So did you take that action in part to maintain your respect and position within E.A.M.?

THE DEFENDANT: Yes.

(A 84–85.2) Mr. Corbett made a similar admission in connection with the factual basis for Count Fifteen. (A 89.) Accordingly, the district court accepted Mr. Corbett's guilty plea and provided a schedule for sentencing. (A 90.)

A PSR was prepared and distributed to the parties on December 7, 2022. (PSR at 1.) On the same date, Probation prepared a sentencing recommendation; yet that sentencing recommendation was not (and has never been) distributed to the parties. (A 137.) In the PSR, Probation agreed with the parties that Mr. Corbett's Sentencing Guidelines range was 30 years, reflecting three consecutively-applied, mandatory-minimum 10 year sentences. (PSR at 23.) The PSR's criminal history section revealed that Mr. Corbett had one juvenile conviction and several prior adult convictions, primarily for narcotics-related offenses, but also including four New York State convictions for unlicensed operation of a motor vehicle. (PSR at 11–18.) The PSR does not identify any arrests or convictions for violent conduct prior to the events of this case.

The PSR does, however, provide a glimpse into the traumatic experiences that defined Mr. Corbett's upbringing. Thus, the PSR reveals how Mr. Corbett's

mother had wrongly led Mr. Corbett to believe that his father was dead; as a result, Mr. Corbett experienced no meaningful relationship with his father (who is indeed alive) until after Mr. Corbett's 2019 arrest. (PSR at 18–19.) The PSR further reveals the abusive home environment in which Mr. Corbett was raised with his mother and his violent stepfather, which resulted in Mr. Corbett being ejected from his home at age 12 and largely living from that point on the streets. (PSR at 19.) At age 9, the PSR notes, Mr. Corbett had already seen a 15-year-old friend of his shot and killed. (PSR at 19.) And at the same age of 9 years old, Mr. Corbett was diagnosed with bipolar disorder and additional mental health pathologies, resulting in at least one suicide attempt at the age of 12. (PSR at 21–22.)

Additional facts regarding Mr. Corbett's traumatic upbringing were the subject of a psychological evaluation prepared on January 29, 2021, by forensic psychologist Dr. Sanford L. Drob, which was attached as Exhibit A to Mr. Corbett's July 17, 2023 sentencing memorandum. (Dist. Ct. Docket No. 358, Exhibit A.) Dr. Drob's evaluation evidenced deficits in Mr. Corbett's cognitive functioning as well as various mental-health pathologies, including posttraumatic stress disorder. (Id. at 8, 10–11.) Mr. Corbett's responses to psychological tests administered by Dr. Drob further indicated that Mr. Corbett had been "abused as a child and that he has experienced traumas in which he felt threatened with or suffered severe bodily injury. . . . At times the anxiety associated with such trauma break through his

13

defenses and he experiences intense anxiety which likely alternates with feelings of numb detachment." (Id. at 10.) Nevertheless, Dr. Drob's report concluded that Mr. Corbett was "motivated for change and is amenable to treatment." (Id. at 12.)

In a sentencing memorandum filed July 24, 2023, the government argued that a 35-year sentence would be sufficient to achieve § 3553(a)'s sentencing purposes and would also be consistent with the Eastern District's sentencing practices in similar cases. (Dist. Ct. Docket No. 361, at 6.) "Guilty pleas to murder are relatively rare," the government explained in its memorandum, "but sentences in this courthouse from recent years for defendants who have pleaded guilty to such conduct generally cluster around 35 years." (Id.) The government thus provided examples of four defendants sentenced in the Eastern District between December 2021 and July 2023 who had pleaded guilty to murder and had received sentences between 32 and 37 years. (Id.)

These defendants included Bushawn Shelton in case number 18-cr-609, who the government explained had "orchestrated a murder and several attempted murders" and was sentenced to 37 years; Michael Liburd, in case number 17-cr-296, who the government explained had "pleaded guilty to racketeering conspiracy involving one murder and a separate murder conspiracy" and was sentenced to 32 years; and Josue Leiva and Luis Rivas, in case number 18-cr-398, both members of the MS-13 street gang who were sentenced to 35 years each for murdering a 16-

14

year old victim and engaging in additional Hobbs Act robberies. (Id.3) Thus, the government explained, imposition of a 35-year sentence "would avoid unwarranted sentencing disparities" with other similarly-situated defendants, as 18 U.S.C. § 3553(a)(6) requires. (Id.)[2]

On July 31, 2023, Mr. Corbett filed a pro se memorandum explaining that his plea counsel had failed to advise him that the April 21, 2015 date of the Count Four offense was more than five years beyond the June 18, 2020 date of the indictment and was thus subject to the applicable statute of limitations. (Dist. Ct. Docket No. 364, at 1.) As Mr. Corbett explained, the plain language of 18 U.S.C. § 3282(a) prohibits a defendant from being "punished" for non-capital offenses unless the defendant is charged within five years of the offense. (Id. at 2.) Accordingly, Mr. Corbett sought to preclude the district court from sentencing him on Count Four. (Id. at 3.) The district court ordered counsel for Mr. Corbett and the government to respond to Mr. Corbett's pro se submission. (A 24.) On August 3, 2023, the government filed a response arguing that Mr. Corbett had waived any statute of limitations defense when he pled guilty and also requesting that the district court appoint new CJA counsel for Mr. Corbett to determine whether Corbett desired to

---

[2] See also United States Attorney's Office, Eastern District of New York, "MS-13 Gang Members Sentenced to 35 Years in Prison for Racketeering Charge Including the Murder of 16-Year-Old Victim in Alley Pond Park in Queens," available at https://www.justice.gov/usao-edny/pr/ms-13-gang-members-sentenced-35-years- prison-racketeering-charge-including-murder-16

withdraw his plea. (Dist. Ct. Docket No. 365.)

The district court held a hearing on August 7, 2023 to address the issue. (A 92 ff.) Initially, the district court indicated that it desired additional briefing from the parties concerning whether or not the statute of limitations had indeed run on Count Four. (A 93.) As the district court explained, "I don't know that I can impose punishment on an expired count," yet opined that the § 924(c) count might not in fact be expired if the § 924(c) count described a continuing violation. (A 94.) The government opined that it had been in Mr. Corbett's interests in any event to waive the limitations defense and plead guilty to Count Four because there were capital counts in the indictment that were not subject to a 5-year statute of limitations and that would have had worse sentencing consequences for Mr. Corbett had he not taken the plea. (A 96–97.) Yet as the district court explained, the issue of whether Mr. Corbett had in fact waived the limitations defense was not apparent from the record:

> THE COURT: I can't say he waived it because we didn't allocute. I'm not sure what his lawyers told him. . . . So who knows what — I don't even need to know what it any advice they gave him on statute of limitations and waivers, but it certainly was not a clear and knowingly waiver on the record before me.

(A 97.)

In response to the government's position that the limitations issue was something the government had thought about prior to offering the plea, the district

16

court noted that this still did not answer the question of whether it is something Mr. Corbett himself had thought about, since the essential question was whether Mr. Corbett had knowingly and intentionally waived his limitations defense: "Obviously I'm not privy to any plea negotiations, but I will with 99 percent certainty say that I didn't hear Mr. Corbett acknowledge that he was waiving the statute of limitations on Count Four." (A 98.) As the district court explained, if Mr. Corbett was so advised "and everyone thought he was waiving, it should have been on the record." (A 102.) The district court thus granted the motion of Mr. Corbett's plea counsel to withdraw, appointed new CJA counsel, and ordered the parties to provide additional briefing on the statute-of-limitations issue. (A 98–99.)

An additional hearing was held on October 24, 2023. (A 106 ff.) At the previous hearing, the court had explained, "I don't know that I can impose punishment on an expired count"; yet at the start of the October 24 hearing, the court instead suggested, "I don't believe there's any authority for me to not sentence [Mr. Corbett] on Count Four since he pled guilty to it." (A 108.) The government took the position that Mr. Corbett had waived the statute of limitations issue simply by pleading guilty, "whether or not there was part of the allocution or whether or not it was even a conscious and knowing choice." (A 110–11.) Thus, when the district court inquired whether the issue would have to be raised in a post-sentencing context, the government expressed the position that Mr. Corbett had no ability to

raise the issue at all, as "the only time it could have been raised was before trial or at trial." (A 111.) The government subsequently suggested, however, that if Mr. Corbett wanted to assert the statute-of-limitations defense, he could do so if he successfully moved to withdraw his plea. (A 115–16.)

A long colloquy from Mr. Corbett's counsel followed, to the effect that the statute of limitations issues relating to Count Four were clearly known or should have been known to the government prior to the plea negotiations, and that the government was in the best position to avoid any issues simply by explicitly including a limitations waiver in the written plea agreement and/or addressing it during the plea allocution. (A 119–20.) Further, counsel noted that there was no evidence of any bad faith on Mr. Corbett's part in raising the issue only after his guilty plea, as there was nothing in the record to suggest that Mr. Corbett had ever been informed about the defense by plea counsel prior to pleading guilty. (A 120.) It would thus be inequitable to place Mr. Corbett into the position of having to withdraw his plea as a result of errors by the government and by plea counsel to which he had not contributed. Counsel opined that the district court had discretion under the applicable rules "to decide what is the right thing to do here." (A 120.)

The district court, however, agreed with the government that "there's no authority" for the principle that a defendant can be convicted on a count and not be sentenced for it. (A 123.) Rather, the district court ruled that it was required to

18

sentence on each count of conviction, and thus held that it would be sentencing Mr. Corbett on Count Four unless he moved to withdraw his plea. (A 128.)

In a letter dated October 31, 2023, Mr. Corbett's counsel informed the court that "Mr. Corbett has determined that he does not wish to move forward with his motion to withdraw his Plea to Count Four of the Indictment." (Dist. Ct. Docket No. 393.)

A sentencing hearing was held on January 22, 2024, at which the district court sentenced Mr. Corbett to 45 years' incarceration. (A 134 ff.) That 45-year sentence represented a 15-year upward variance from Mr. Corbett's Guidelines range, and a 10-year increase beyond even the 35 years to which the government agreed to cap its allocution in the Rule 11(c)(1)(B) plea agreement. For a defendant of Mr. Corbett's age, the 45 year term of incarceration effectively amounts to a life sentence.[3] Although the sentencing minutes extend to 81 transcript pages and include an especially detailed statement of the case and enumeration of the § 3553(a) sentencing factors, the district court's sentencing explanation is nevertheless more notable for what it excludes than for what it contains. (A 177–

---

[3] Unlike some defendants, where the effective length of the sentence may be significantly shorter than the pronounced sentence due to the defendant's ability to earn time-credits toward early release, Mr. Corbett's § 924(c) convictions render him ineligible to earn such credits. See 18 U.S.C. § 3632(d)(4)(D)(xxii). Moreover, as will be discussed below, the life expectancy of prisoners in the federal system is greatly diminished as compared to the general American population.

204.)

First, and most importantly, the district court provides no explanation for its determination that the 35-year sentence sought by the government and contemplated by the parties in the plea agreement was insufficient to satisfy the § 3553(a) sentencing factors. The sole explanation provided by the district court for any upward Guidelines variance is the court's statement that "simply slapping on the 10-year mandatory minimum would not do justice to the life of Mr. Tenorio or the impairment of Mr. John Doe Number One." (A 204.) Yet the low end of the district court's sentencing options was not merely a single 10-year sentence, but a minimum of three such sentences applied consecutively to yield a mandatory minimum of 30 years; and the government had allocuted for an even longer sentence of 35 years. Aside from the district court's conclusory statement that imposition of 10-year mandatory minimum sentences would be insufficient, the court provides no additional explanation for why the 35-year sentence sought by the government also fails to "do justice" to the shooting victims in this case (or whether similar sentences failed to "do justice" in the four comparable cases cited by the government in its sentencing memorandum). Without any further discussion of the basis for the opinion, however, the district court sentenced Mr. Corbett to consecutive sentences of 20 years on Count Four, 10 years on Count Eight, and a further 15 years on Count Fifteen, for a total of 45 years. (A 204–05.)

20

Second, the district court stated at the commencement of the hearing that, in preparing for sentencing, it had reviewed a sentencing recommendation prepared by Probation back on December 7, 2022. (A 137.) As noted above, that recommendation was never shared by the parties. It is not until page 70 of the sentencing minutes, however — moments before the district court announced the sentence and well after Mr. Corbett had already addressed the Court and counsel for both parties had completed their allocutions — that the district court first revealed that Probation had recommended "45 years in custody, followed by two years of supervised release." (A 203.) Even at this point, it is unclear whether the district court's decision to impose a 45-year sentence was based on the same or different reasoning from that suggested in the recommendation prepared by Probation. As described by the district court, Probation's own reasoning in support of a 45-year sentence was simply that a 45-year sentence "would account for the egregious nature of the underlying conduct." (A 203.) It is apparent that neither Mr. Corbett nor the government had any fair opportunity at sentencing to address or respond to concerns raised by Probation more than 13 months prior to the date of Mr. Corbett's sentencing and well prior to the presentation of significant mitigation evidence, including Dr. Drob's psychosocial report and the cases cited by the government in support of a 35-year sentence. Indeed, there is no analysis in the sentencing minutes of the necessity to avoid unwarranted sentencing disparities as required by §

21

3553(a)(6), as the government itself had raised in its memorandum, or of the four cases the government had cited in which defendants in closely similar circumstances had received sentences of between 32 and 37 years.

Finally, there is no indication in the sentencing minutes that the district court factored in Mr. Corbett's acceptance of responsibility in waiving his trial rights and agreeing to plead guilty. Although acceptance-of-responsibility points are not relevant to the Guidelines calculation in this case, Mr. Corbett's decision to waive his constitutional rights and spare the government and the courts the significant expenses of a jury trial are still facts relevant to the district court's sentencing discretion under 18 U.S.C. §§ 3553 and 3661. Yet it is wholly unclear from the record whether or not the district court credited Mr. Corbett to any extent for his guilty plea and waiver of trial rights, in nevertheless imposing a 45-year sentence that is the functional equivalent of the most extreme sentence (life imprisonment) that he might have faced had he gone to trial.

Following the pronouncement of the sentence, the district court advised Mr. Corbett of his right to file a notice of appeal within 14 days of the judgment. (A 213.) Mr. Corbett filed a timely notice of appeal on January 25, 2024. (A 222.)

## SUMMARY OF THE ARGUMENT

1. Corbett was not required to withdraw his guilty plea in order to assert that the statute of limitations constituted a bar to sentencing on Count Four. The

disjunctive language of 18 U.S.C. § 3282(a), which states (with exceptions inapplicable here) that "no person shall be prosecuted, tried, or punished" for an offense committed more than five years after the indictment is found, makes clear that defendants have a right not to be *punished* for time-barred offenses that is independent of the right not to be prosecuted or tried. The purpose of limitations statutes, which specifically include protection from "official punishment" for stale crimes, see Toussie v. United States, 397 U.S. 112, 114-15 (1970), makes still clearer that § 3282(a) includes a protection against punishment separate and apart from the protection against trial and conviction. Moreover, because Corbett's plea agreement specified that he waived statute-of-limitations defenses only as to offenses not already time-barred at the time of the agreement, he neither explicitly nor implicitly waived such defenses as to Count Four, which unquestionably *was* time-barred at that point. The sentence imposed in Count Four must therefore be vacated.

2a.    The 45-year sentence imposed by the district court was procedurally unreasonable. The district court did not adequately explain its reasons for exceeding not only the advisory Guideline range but the government's recommendation, and did not properly advise the parties that it intended to do so, depriving Corbett of an opportunity to address and confront the court's reasoning for such variance at the outset of sentencing. Moreover, to the extent that the district court's sentence was based on a recommendation made by the Probation Department, it was procedurally

unreasonable for the court not to disclose the Probation Department's reasoning in open court and to disclose whether or not it was based on facts not previously made part of the record.

2b.    The sentence was also substantively unreasonable. In imposing a sentence beyond what both the government and the Guidelines recommended, the court disregarded the compelling mitigating factors in Corbett's background; the fact that the underlying conduct, which was prompted by the victims' own lethal violence toward a person Corbett held dear, was far outside the heartland of murder or attempted murder in aid of racketeering; and the fact that such a draconian sentence operated as a disincentive to future guilty pleas. Moreover, the court erroneously suggested that imposition of consecutive statutory minimum sentences would somehow amount to Corbett getting away scot-free and/or devaluing one or more of the crimes. The factors relied upon by the district court in imposing this harsh and severe sentence thus cannot bear the weight assigned to them and the sentence should be reduced to a still-substantial aggregate of 35 years.

## POINT I

### CORBETT WAS NOT REQUIRED TO WITHDRAW HIS PLEA IN ORDER TO INVOKE HIS RIGHT NOT TO BE PUNISHED ON A TIME-BARRED COUNT

18 U.S.C. § 3282(a) states that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital,

24

unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." It is undisputed that Corbett's case is not one in which the law "expressly provided" otherwise – to the contrary, it was agreed by the parties below and by the district court that the 18 U.S.C. § 924(c) firearm charge embodied in Count Four is subject to the ordinary five-year statute of limitations and that there are no factors that would operate as a toll. It is also undisputed that the conduct charged in Count Four occurred on April 21, 2015 and that Corbett was indicted more than five years later, on June 18, 2020.

The government nevertheless argued below, and the district court agreed, that Corbett could not obtain relief on his claim that Count Four was time-barred unless he withdrew his plea. As discussed below, this was error, as § 3282 confers a right not to be "punished" for a time-barred offense that is independent of the right not to be prosecuted or convicted. Moreover, as further discussed below, Corbett has neither explicitly nor implicitly waived this right. This Court should therefore reverse so much of the judgment below as sentenced Corbett on Count Four and should hold that he cannot be sentenced on that count.

A.  **18 U.S.C. § 3282 Gives Corbett an Independent Right Not to be Punished on Count Four.**

It is hornbook law that "words of common usage" in a statute are to be given their "plain and ordinary meanings." United States v. Gagliardi, 506 F.3d 140, 147 (2d Cir. 2007). It is equally well-settled that "[t]his Court's duty [is] to give effect,

where possible, to every word of a statute," Duncan v. Walker, 533 U.S. 167, 174 (2001), and that "courts will avoid interpretations that render [statutory] provisions superfluous," United States v. Anderson, 15 F.3d 278, 283 (2d Cir. 1994). Furthermore, where terms in a statute are stated in the disjunctive, this Court must "giv[e] each term independent significance… unless the context dictates otherwise." Caputo v. Pfizer, Inc. v. Pfizer, Inc., 267 F.3d 181, 190 (2d Cir. 2001).

As stated above, 18 U.S.C. § 3282(a) provides that, with exceptions not applicable here, "no person shall be prosecuted, tried, *or punished*" for an offense unless indicted within five years (emphasis added). The terms "prosecuted, tried, or punished," are stated in the disjunctive with a serial comma. As this Court has held in other contexts, a statute that contains terms which are "listed sequentially, each separated by a comma, and are phrased in the disjunctive," each term denotes a separate category and is divisible from the others. See Canada v. Gonzales, 448 F.3d 560, 568 (2d Cir. 2006); see also Singer v. United States, 323 U.S. 338, 341 (1945) (where statute contained several clauses "[e]ach… set off by a comma," the last item in the list was "an independent clause of a series[,] not a part of the preceding clause"). Indeed, even without the comma, the use of the word "or" is sufficient to render the terms disjunctive. See Continental Ins. Co. v. Atlantic Cas. Ins. Co., 603 F.3d 169, 181 (2d Cir. 2010) ("Although a comma between 'applications' and 'or membrane roofing' might underscore the disjunctive effect of 'or,' it is not

26

necessary"). Nor is there any "context" in § 3282(a) – which is a simple, one-sentence provision – that "dictates" interpreting these terms otherwise. Indeed, if anything, the "context" *supports* disjunctive interpretation given that "criminal limitations statutes are to be liberally interpreted in favor of repose" in light of the important interests they protect – interests that specifically include "minimiz[ing] the danger *of official punishment* because of acts in the far-distant past." <u>Toussie v. United States</u>, 397 U.S. 112, 114-15 (1970) (emphasis added).

This means that the language § 3282 establishes three separate rights, each of which must be given independent meaning with respect to a time-barred charge: a right not to be prosecuted, a right not to be tried, and a right not to be punished. The ordinary meaning of the term "punish" includes, as relevant here, "to subject to pain, loss, confinement, death, etc., as a penalty for some offense, transgression, or fault" and/or "to inflict a penalty for."[4] Alternatively, "punish" means "to impose a penalty on for a fault, offense, or violation" or "to inflict a penalty for the commission of (an offense) in retribution or retaliation."[5] By either of these definitions, "inflict a penalty" encompasses imposition of a sentence by a criminal court. And that means that even if Corbett pled guilty to Count Four, equivalent to being convicted after trial, he had an independent right not to be *sentenced* on Count Four.

---

[4] https://www.dictionary.com/browse/punish (visited May 5, 2025).

[5] https://www.merriam-webster.com/dictionary/punish (visited May 5, 2025).

This appears to be an issue of first impression. While this Court has held that the statute of limitations is not jurisdictional and therefore cannot be raised for the first time on *appeal*, see United States v. Walsh, 700 F.2d 846, 855-56 (2d Cir. 1983), research does not reveal any case which has considered whether the statute of limitations may be raised in the lower court, after a guilty plea, as a bar to *sentencing*.[6] The Walsh court's conclusion that the statute of limitations is "not cognizable on appeal unless properly raised below," id. at 856, has no bearing on cases like this one in which the statute-of-limitations issue *was* "properly raised below," albeit at sentencing, via specific objection and detailed argument.

Defendant-Appellant Corbett submits that this Court should resolve this issue of first impression in his favor. As stated above, the canons of statutory construction make clear that each of the disjunctive protections provided by § 3282 – protection against being prosecuted, against being tried, and against being punished – has independent significance, and the Toussie Court's emphasis that statutes of limitations ensure against "official punishment" for stale offenses makes even clearer that protection from punishment is an independent right. Moreover,

---

[6] Similarly, in United States v. Hsu, 689 F.3d 112, 117-18 (2d Cir. 2012), this Court held that the defendant could not raise, for the first time on appeal, a claim that he "could not plead guilty to" time-barred offenses – again, a holding that has no bearing where, as here, (1) Corbett did raise his statute-of-limitations claim below, and (2) he raised it as a bar to sentencing, not to his guilty plea.

punishment is a separate burden from prosecution and trial, given that the entry of a judgment of conviction, in and of itself, creates certain stigmas, such as immigration consequences and/or the possibility of an enhanced sentence for any future offense, even if no punishment ensues. This Court should therefore find, contrary to the district court's determination, that Corbett was not required to withdraw his plea *in toto* in order to raise the statute of limitations as a bar to sentencing on one of the counts specified in that plea.

**B.      Corbett's Guilty Plea Did Not Waive His Statute of Limitations Objection to Sentencing on Count Four.**

Nor did Corbett waive his statute of limitations claim either explicitly in his plea agreement or implicitly by virtue of his guilty plea as such. The language of the plea agreement, which waives statute-of-limitations defenses only "with respect to any prosecution that is not time-barred on the date that [the] agreement is signed" (A49), plainly did not encompass Count Four, which was already time-barred not only on the date the agreement was executed but on the date the indictment was lodged. Nor did Corbett's guilty plea, in and of itself, operate as a waiver of sentencing claims including the right not to be sentenced on a time-barred count, and in any event, by agreeing to the cited language in the plea agreement, the government "waived the waiver" as to such claims.

"[P]lea agreements are construed according to contract law principles." United States v. Ready, 82 F.3d 551, 558 (2d Cir. 1996). "Yet, because plea

agreements are unique contracts, [the courts] temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards." United States v. Lutchman, 910 F.3d 33, 37 (2d Cir. 2018), quoting United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011). "First, courts construe plea agreements strictly against the Government… for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power." Ready, 82 F.3d at 559. "Second, [the courts] construe the agreement against a general background understanding of legality" by "presum[ing] hat both parties to the plea agreements contemplated that all promises made were legal, and that the non-contracting 'party' who implements the agreement (the district judge) will act legally in executing the agreement." Id. "Finally… courts may apply general fairness principles to invalidate particular terms of a plea agreement." Id.

Applying these principles to the instant case, the plea agreement clearly did not waive any statute-of-limitations claims as to Count Four.  As discussed above and in the Statement of Facts, the agreement contained a clause under which Corbett waived statute-of-limitations defenses as to any charges "that [are] not time-barred on the date that this agreement is signed." (A49).  The plea agreement also contained an integration clause specifying that no other "promises, agreements or conditions"

had been made by the parties and that any modifications must be agreed in writing. (A52). Construed strictly against the government, the combination of these clauses means that Corbett waived statute-of-limitations defenses *only* as to charges that were not time-barred when the agreement was signed, and *not* as to charges, like Count Four, that were.

Nor did Corbett's guilty plea, in and of itself, accomplish what the plea agreement did not. Under well-settled law, "[a] voluntary guilty plea entered on the advice of counsel is a waiver of all non-jurisdictional defects in any *prior* stage of the proceedings against [the defendant]." United States ex. rel. Glenn v. McMahon, 349 F.2d 1018, 1019 (2d Cir. 1965) (emphasis added); accord United States v. Coffin, 76 F.3d 494, 496 (2d Cir. 1996).  This has no application in Corbett's case, where the defect arose at a stage of the proceedings *subsequent* to the guilty plea – the right not to be punished for a time-barred offense implicates the sentencing stage of the proceedings, not the plea process or any prior stage.  To the contrary, "[a] guilty plea does not waive challenges to the sentence imposed after the plea is accepted. United States v. Bjorkman, 270 F.3d 482, 492 (7th Cir. 2001). Moreover, a guilty plea does not waive the claim that "on the face of the record the court had no power to enter the conviction *or impose the sentence*." United States v. Adams, 955 F.3d 238, 252 (2d Cir. 2020) (emphasis added), quoting United States v. Broce, 488 U.S. 563, 569 (1989).

31

In this case, Corbett's claim is precisely that "on the face of the record" – which shows unmistakably that the conduct underlying Count Four occurred on April 21, 2015 but that Corbett was not indicted until June 18, 2020 – the district court had "no power to… impose… sentence" on that count. His guilty plea, in and of itself, thus did not waive that claim.

Alternatively, even if this Court were to find that a guilty plea does waive sentencing-related statute-of-limitations claims – which under <u>Adams</u> and <u>Broce</u>, <u>supra</u>, it does not – the language of the plea agreement vitiates any such waiver. It is well-settled that the government, as well as the defendant, may waive rights and claims by virtue of a plea agreement, and that where a plea agreement provides rights to a defendant that are "more generous" than he would have under an open plea, the government is bound to those rights. <u>See</u> <u>United States v. Amirouche</u>, 743 F. Supp. 3d 110, 132 n.16 (E.D.N.Y. 2024), <u>citing inter alia</u> <u>United States v. Wilson</u>, 920 F.3d 155, 162 (2d Cir. 2019). Given that, as stated above, the language of plea agreements must be strictly construed against the government, the clause regarding statute-of-limitations defenses – specifying that Corbett waived such defenses concerning charges not already time-barred on the date of the agreement – must be construed to create a conditional plea under which Corbett *did not* waive such defenses as to charges that *were* already time-barred. And this is so even if such defenses would have been waived by an open plea, because by including this language in a plea

agreement it drafted, the government affirmatively "waived the waiver." <u>See, e.g.</u>, <u>United States v. Caputo</u>, 978 F.2d 972, 975 (7th Cir.1992) ("There are other grounds besides plain error on which courts forgive waivers in criminal as in other cases. One is where the appellee has waived waiver."). Accordingly, this Court should find that Corbett is fully entitled to vacatur of his sentence on Count Four and to prevail on his claim that 18 U.S.C. § 3282(a) protects him from being punished on that count.

## POINT II

### THE HARSH 45-YEAR SENTENCE IMPOSED BY THE DISTRICT COURT WAS BOTH PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE

The sentence imposed on Tyshawn Corbett is extraordinary by any measure. A 45-year prison sentence is an extreme length of time, and for a defendant Corbett's age, the difference between that and life without parole is largely a matter of semantics. Moreover, as even the government agreed, 45 years is not only more than it asked for but well beyond the median sentence imposed on defendants who pled guilty to similar crimes, which "cluster around 35 years."

It is submitted that, while appellate review of sentences is deferential, this is one sentence that cannot withstand such review, for both procedural and substantive reasons. Procedurally, the district court failed to adequately explain its upward variance from both the applicable Sentencing Guideline range and the government's own recommendation, failed to inform the parties in advance of sentencing that it

intended to do so, and failed to disclose the Probation Department's recommendation and/or the basis therefor so as to give Corbett's counsel an adequate opportunity to respond. And substantively, the district court failed to adequately consider the compelling mitigating factors in this case as well as the facts that put it well outside the heartland of the charged offenses, and wrongly concluded that a statutory minimum sentence for each of the three charged offenses would mean that Corbett was getting off scot-free for one or more of them. Therefore, the factors cited by the district court cannot bear the weight assigned to them, and the resulting 45-year sentence is excessive in light of United States v. Booker, 543 U.S. 220, 749-50 (2005), and its progeny.

## A.    Applicable Law and Standard of Review.

In Booker, as this Court is well aware, the Supreme Court held that the Sentencing Guidelines are advisory rather than mandatory, and that sentencing courts are obligated to consider the seven factors set forth in 18 U.S.C. § 3553(a). Moreover, the sentence "shall be sufficient, *but not greater than necessary*, to comply with [these] purposes." 18 U.S.C. § 3553(a) (emphasis added); see also Gall v. United States, 128 S. Ct. 586, 596 n.6 (2007) (characterizing Section 3553(a)'s parsimony clause as a "general directive"); United States v. Sanchez, 517 F.3d 651, 660-61 (2d Cir. 2008).

Post-Booker sentences are reviewable on appeal for reasonableness.  See

Booker, 543 U.S. at 751. Reasonableness review of a sentence has two components: procedural and substantive. See United States v. Gonzalez, 529 F.3d 94, 97 (2d Cir. 2008); United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005). Procedural reasonableness relates to "procedures used to arrive at the sentence." Sanchez, 517 F.3d at 660. In other words, "a sentence wouldn't be 'reasonable,' regardless of length, if legal errors, properly to be considered on appeal, led to its imposition." Crosby, 397 F.3d at 114. Likewise, a district court's sentence is procedurally reasonable if the court "fails adequately to explain its chosen sentence… includ[ing] an explanation for any deviation from the Guidelines range." United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2007). While the court is not required to explain its reasoning in exhaustive detail, it "must be sufficiently specific to permit meaningful appellate review," United States v. Ware, 577 F.3d 442, 452 (2d Cir. 2009), and must engage with and analyze "the positions presented by defense counsel [which are] relevant under § 3553(a)," see United States v. Baker, 254 Fed. App'x 73, 76 (2d Cir. 2007).

Substantive reasonableness, in contrast, relates to whether "the length of the sentence" comports with the factors set forth in 18 U.S.C. § 3553(a). United States v. Rattoballi, 452 F.3d 127, 131-32 (2d Cir. 2006). In assessing substantive reasonableness, this Court may "consider whether the factor, as explained by the district court, can bear the weight assigned it under the totality of circumstances in

35

the case." <u>United States v. Stewart</u>, 590 F.3d 93, 135 (2d Cir. 2009); <u>Cavera</u>, 550 F.3d at 190.

Significantly, this Court has explicitly declined to hold that sentences within the Guideline range enjoy any presumption of reasonableness, and in <u>United States v. Fernandez</u>, 443 F.3d 19, 28 (2d Cir. 2006), reaffirmed its rejection of the principle that "a Guideline sentence, without more, is presumptively reasonable." Instead, the <u>Fernandez</u> court reaffirmed the importance of individual consideration of each sentence to determine whether it is reasonable under the facts of the case. <u>See id.</u> at 27-28; <u>see also</u> <u>Rattoballi</u>, 452 F.3d at 132 (reasonableness review "is not a rubber stamp" and "is a concept that implies boundaries"). Moreover, the <u>Rattoballi</u> court reiterated that the reason for declining to impose a presumption of reasonableness upon Guideline sentences is that "the guidelines *are still generalizations* that can point to outcomes that may be unreasonable... in particular cases." <u>Id.</u> at 133 (emphasis added), <u>citing</u> <u>United States v. Jimenez-Beltre</u>, 440 F.3d 514, 518 (1st Cir. 2006) (en banc).

Thus, it is settled law in this Circuit that a Guideline sentence such as was imposed here may be substantively unreasonable under the circumstances of a specific case. In other words, a defendant may obtain reversal by showing that his sentence would be unreasonably high in light of the totality of the circumstances. <u>See</u> <u>United States v. Sanchez-Juarez</u>, 446 F.3d 1109, 1113-14 (10th Cir. 2006)

36

(collecting cases); see also United States v. Cirilo-Munoz, 504 F.3d 106 (1st Cir. 2007). Defendant submits that, for the reasons detailed below, he has proven exactly that, and this Court should vacate his sentence as substantively unreasonable.

Moreover, although Gall, supra, and Kimbrough v. United States, 128 S. Ct. 558 (2007) held that district court sentences are to be reviewed deferentially, neither case eliminated substantive reasonableness review, and this Court continues to have a robust role in ensuring that Federal sentences reflect a proper balancing of the Section 3553(a) factors. See, e.g., Sanchez, 517 F.3d at 660-61.

## B.    The Sentence Is Procedurally Unreasonable.

Defendant submits that the sentence in this case is procedurally unreasonable on two grounds. First, the district court's explanation of why it imposed a sentence exceeding not only the advisory Guideline range but the government's recommendation fell woefully short of the analysis required by Cavera and Ware, supra, and their progeny. Second, in a case such as this where the district court plainly had a pre-existing intent to impose an above-Guideline sentence and where that intent may have been based in whole or part on a Probation Department recommendation, the court should have stated its intent at the outset and disclosed the basis of that recommendation.

Turning first to the district court's explanation for the 45-year aggregate sentence, that explanation consisted of a single sentence, that "simply slapping on

the 10-year mandatory minimum would not do justice to the life of Mr. Tenorio and the impairment of Mr. John Doe Number One." (A204). But of course, the district court was not being asked, either by defendant or by the government, to "simply slap[] on the 10-year mandatory minimum." The statutory minimum in this case was instead three *consecutive* 10-year sentences, totaling 30 years – a sentence that would in fact mete out separate punishments for each victim and for each shooting incident involving John Doe No. 1. And the sentence contemplated by the plea agreement was not even that – it was 35 years, which would do justice to Tenorio by allowing a longer sentence to be imposed for the Tenorio shooting than for the other two incidents.

The district court's statement thus falls well short of explaining the necessity of a 45-year sentence. Even if that statement provided some basis for sentencing Corbett at some amount higher than the 30-year minimum, which was also the guideline range, it still would not explain why the court felt it necessary to go *15 years* beyond that range, representing a 50 percent increase. Nor did the court engage with the government's explanation of why 35 years was a reasonable and appropriate sentence that had been meted out in four other murder cases which involved similar or worse levels of violence and in which the defendant had pled guilty. As discussed above, this includes cases where the defendants were MS-13 members who stabbed a 16-year-old victim to death and that attracted 32 to 37-year sentences. The district

38

court simply did not explain why it felt this case was even worse than the brutal stabbing death of a minor.

This was not, as the district court apparently viewed it, a case in which the advisory guideline range/statutory minimum sentence was something routinely meted out to defendants less violent than Corbett. Simply put, it is rare for the government to offer a plea bargain which includes a 30-year mandatory minimum in the first place, and it is also rare for the government to require a defendant to plead guilty to multiple § 924(c) counts. Such pleas are only insisted upon, and only entered into, in cases where there has been substantial underlying violent conduct. The very reason why the government insisted on such a plea in this case was to make sure that a 10-year sentence *would not* be simply "slapped on," to make sure that Corbett's conduct toward each victim was separately punished, and to take into account not only the discharge of the firearms but the harm that resulted from that discharge. It is impossible to imagine that the government would have insisted on a plea with a 30-year minimum if Corbett had simply discharged weapons without harming anyone. And indeed, had Corbett's plea been to assault and/or murder rather than three § 924(c) counts, he could conceivably have received a *shorter* sentence because there would have been no requirement for the sentences to be consecutive. Accordingly, the underlying violent conduct is baked into the plea, and there is no rational basis to impose a 45-year sentence to distinguish Corbett from nonviolent

39

defendants or from those who harmlessly discharge a weapon. The district court's explanation made no sense even on its own terms.

The district court's reference to the Probation Department recommendation (A203) does not fill the gap in its analysis. As detailed in the Statement of Facts, the district judge *mentioned* the recommendation, but did not state that she was *adopting the reasoning* of the Probation Department either in whole or in part. A mere mention of the recommendation does not substitute for an explanation of whether the court was in fact following the reasoning of that recommendation, what parts of the recommendation the court agreed and disagreed with, and what parts the court viewed as justification for a sentence as lengthy as 45 years. This is particularly true since – as will be returned to below – the Probation Department sentencing recommendation has never been shared with the parties or its reasoning explained in open court.

This Court has explained in analogous circumstances that mere "adoption of the PSR does not suffice if the PRS itself does not state enough facts to permit meaningful appellate review." See Ware, 577 F.3d at 452. Although a Probation Department recommendation is not strictly part of the PSR, defendant submits that the same principle applies – adoption of the Probation Department's recommendation (to the extent the district court in fact did so) is only sufficient to the extent that the basis of the recommendation is made part of the record and such

40

basis contains enough detail to permit this Court to exercise meaningful review. See United States v. Vrancea, 606 Fed. App'x 21, 24 (2d Cir. 2015) (district court's statements did not sufficiently explain the court's upward departure from the guideline range "even when coupled with its Statement of Reasons, which purports to adopt the PSR without change"); see generally United States v. Sindima, 488 F.3d 81, 86 (2d Cir. 2007) ("in the course of imposing a sentence, the district court's statement of reasons must at least explain — in enough detail to allow a reviewing court, the defendant, his or her counsel, and members of the public to understand, why the considerations used as justifications for the sentence are sufficiently compelling or present to the degree necessary to support the sentence imposed").

It was also procedurally unreasonable for the sentencing court not to (i) give advance disclosure of its intention to upwardly depart, (ii) share the full reasoning of the Probation Department's recommendation to the parties; and (iii) advise the parties of whether this recommendation was based on facts not already in the record. As discussed in the Statement of Facts, the only reference to a term of 45 years, prior to the actual imposition of sentence, occurred minutes earlier when the district judge stated for the first time that "Probation has recommended 45 years in custody, followed by two years of supervised release, stating that such a sentence would account for the egregious nature of the underlying conduct. (A203). Notably, the district court had been in possession of the Probation Department's recommendation

41

for more than a year. Nevertheless, not until late in the sentencing hearing did the district court even mention that such a recommendation existed or that it was considering following that recommendation, let alone the basis thereof.

Defendant notes that the sentencing took place in the wake of a Rule 11(c)(1)(B) plea agreement whose very purpose was to solidify the parties' expectations and prevent ambush and surprise. See generally Ginns v. Towle, 361 F.2d 798, 801 (2d Cir. 1966) ("The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush, sometimes called the sporting theory of justice, and avoid the very kind of surprise practiced upon the defense in this case"). Certainly, the district court did not, at the time the plea was entered, reject the plea bargain or opine that the sentence the government agreed to recommend was inadequate. And everything else – the 35-year trigger for the appellate waiver (which the sentencing court reminded defendant of early in the sentencing hearing) and the government's advocacy for a 35-year sentence on the basis of prior similar cases – also pointed to 35 years as the lodestar penalty. Defendant thus entered sentencing with a reasonable expectation of being sentenced to no more than 35 years, see United States v. Labbe, 588 F.3d 139, 143-44 (2d Cir. 2009) (finding that district court's actions prior to sentencing gave defendant a reasonable expectancy of a 57-month sentence),m and if the district court was considering imposing a substantial upward variance, due process and

42

sound practice militate in favor of it providing adequate advance notice to the parties, see Irizarry v. United States, 553 U.S. 708, 716 (2008) (although district court is not strictly required to pre-disclose its intent to apply a § 3553(a) variance, "[s]ound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues").

This is particularly true where, as here, the district court's decision to impose a 45-year sentence may well have been based, either in whole or in part, on an out-of-court recommendation made by the Probation Department which was never disclosed to the parties. To be sure, in the recent decision of United States v. Fletcher, 134 F.4th 708, 713-14 (2d Cir. 2025), this Court noted that the Probation Department's special role as "eyes and ears" of the judiciary allowed some leeway for ex parte communication between the Department and the district judge. But at the same time, the Fletcher court held that such undisclosed communication is allowed "only as long as the [probation] officer reveals no new facts that bear on sentencing." Id. at 714. "If the officer provides new factual information, the district court may not rely on those facts unless they are first disclosed to the parties and each side has had a reasonable opportunity to comment." Id.

Defendant submits that Fletcher imposes an obligation on the district court, when it sentences a defendant to a term which is greater than what the government

43

or the plea agreement specify but which was recommended by the Probation Department, "sound practice," <u>see</u> <u>Irizarry</u>, <u>supra</u>, requires the district court to lay bare the reasoning of the recommendation so that it can be determined whether such reasoning is based on facts that were not previously made part of the record. Moreover, it is only through such disclosure, made at or near the beginning of the sentencing colloquy, that a defendant – or indeed the government – can address the court's concerns with specific, focused arguments. In this case, for instance, both parties might have provided the court with more information concerning the factors that go into charging and plea decisions in murder cases, whether and in what kinds of cases the government seeks a 30-year mandatory minimum sentence, and how not only the firearm discharge but the underlying violence is taken into account when requiring a plea that involves multiple mandatory consecutive sentences. This Court should therefore find for all the above reasons that the sentence did not meet the procedural mandates of <u>Booker</u> and its progeny.

## C. The Sentence Is Substantively Unreasonable.

Defendant also submits that, separate and apart from the procedural flaws of the sentence, it was substantively unreasonable – that is, "shockingly high… as a matter of law." <u>United States v. Rigas</u>, 583 F.3d 108, 123 (2d Cir. 2009). To be sure, defendant does not minimize the seriousness of his conduct, including the taking of a human life. But even with this as the background, three factors loom large in

establishing that the punishment did not fit the crime and that the factors cited by the district court cannot "bear the weight assigned [them]" as required by Stewart, supra.

*First,* there are substantial and undisputed mitigating factors in this case that, at least to some extent, counteract the seriousness of the offense conduct. Corbett presented undisputed evidence to the district court of his significant mental health issues, post-traumatic stress syndrome, and background of being raised in a terrible setting of violence and deprivation. He also showed, even more significantly, that the trigger for his violent conduct against Tenorio and John Doe No. 1 was Tenorio's murder of his best friend.

Whether or not Corbett may have had a *secondary* motive of maintaining his role in the E.A.M. organization, it is at least apparent that his *primary* motivation for shooting Tenorio and John Doe No. 1 was to avenge his friend's slaying against the perpetrators of that murder. And while that does not undo the harm Corbett caused to these victims, it at least provides necessary and important context for understanding why he acted against these particular victims in the way he did and why he does not necessarily pose the same risk to society at large. In particular, such evidence of motive reveals Corbett to be less culpable than other, similarly situated defendants who engage in violence cynically for their own personal gain.

*Second,* Corbett may well have been able to prevail at trial based on the absence of a true gang-related motive for shooting Tenorio and John Doe No. 1.

45

Defendant notes that in United States v. Farmer, 583 F.3d 131, 142 (2d Cir. 2009), this Court rejected a *post hoc ergo propter hoc* approach to whether the defendant had the requisite specific intent to support a charge of murder in aid of racketeering: "the question is not whether [a defendant's] position . . . was advanced in fact by the murder he committed, but whether his purpose in committing the murder was to benefit his position." Thus, had Corbett gone to trial, the government would not have been able to prove the intent element simply by showing (as was stated in the plea allocution) that Corbett's fellow gang members would have respected him less had he not committed the charged shootings; instead, the government would have had to prove that Corbett in fact had such loss of respect in mind as opposed to the much more obvious motive of avenging his childhood friend. And this Court has repeatedly held that the intent element is not a rubber stamp and has not hesitated to reverse convictions where proof of this element was lacking. See, e.g., United States v. Bruno, 383 F.3d 65, 84-85 (2d Cir. 2004); United States v. Ferguson, 246 F.3d 129, 135-36 (2d Cir. 2001); United States v. Polanco, 145 F.3d 536, 540 (2d Cir. 1998); United States v. Thai, 29 F.3d 785, 818 (2d Cir. 1994).

This is not to speculate about whether Corbett would have won or lost had he gone to trial. However, it is clear that he *could* have secured acquittal on the VICAR and firearms counts relating to Tenorio and John Doe No. 1, and that the bargain was therefore a true balancing of risks and losses on both sides – Corbett was giving

46

up the risk of life without parole or an equivalent sentence, and the government was accepting a lesser punishment in order to avoid the risk that Corbett might go entirely unpunished and the victims' death and injury unrequited. By imposing a sentence that *is*, to a defendant of Corbett's age, a de facto life term,[7] the district court upset that bargain, and ensured that Corbett would receive no meaningful benefit in exchange for giving up his right to a trial. And not only that, but such a sentence disincentivizes future guilty pleas – why plead guilty if one is going to die in prison anyway? – and only ensures that more victims and their families will have to endure the trauma of trial.

*Third*, the 45-year sentence represents an unwarranted disparity with sentences meted out to other defendants similarly situated to Corbett, i.e., defendants who killed victims with deadly weapons and pled guilty pursuant to agreements with the government. As discussed above, the government itself presented four such cases to the district court, all of which had resulted in 32 to 37-year sentences (or, as the

---

[7] Defendant Corbett's projected release date as shown on the Bureau of Prisons web site is September 18, 2057, at which time he will be 67 years old. While this is within the life expectancy for African-American males in the United States, it is outside the life expectancy for *incarcerated* males in the federal system, which is 64 years. See People v. Rodriguez, 106 N.E.3d 436, 459 (Ill. App. 2018) (discussing the U.S. Sentencing Commission Preliminary Quarterly Data Report for 2018); see also United States v. Taveras, 436 F.Supp.2d 493, 500 (E.D.N.Y.2006) (finding 'persistent problems in United States penitentiaries of prisoner rape, gang violence, the use of excessive force by officers, [and] contagious diseases' that lead to a lower life expectancy in prisons in the United States), aff'd in part, vacated in part sub nom. United States v. Pepin, 514 F.3d 193 (2d Cir. 2008).

47

government put it, clustered around the 35-year mark), and which included such heinous crimes of violence as the stabbing of a 16-year-old child by two MS-13 gang members. The other cases cited by the government also involved fatal shootings or stabbings under circumstances at least as disturbing, or more so, than the facts of this case. In light of the ready reference in the government's sentencing memorandum to these comparable cases, this Court should find that the district court's decision to impose a sentence 10 years higher than even the extremely long sentences in those other cases is unreasonable. See United States v. Dorvee, 616 F.3d 174, 186-87 (2d Cir. 2010) (discussing 18 U.S.C. § 3553(a)(6)).

In sum, the sentence in this case was "greater than necessary" to satisfy the purposes of criminal sentencing under 18 U.S.C. § 3553(a), and even accounting for the seriousness of Corbett's conduct, is a sentence that is "shockingly high" and cannot bear the weight assigned to it. This Court should therefore reduce Corbett's sentence to the advisory guideline range of 30 years or, alternatively, remand to the district court for imposition of a penalty substantially less than the sentence that currently stands.[8]

---

[8] In the event that this Court finds that imposition of a penalty on Count Four is barred by the statute of limitations, which it should (see Point I), then the statutory minimum penalty would be 20 years rather than 30, and defendant submits that a 20-year sentence would then be the appropriate penalty in light of all the factors discussed above.

48

## <u>CONCLUSION</u>

**WHEREFORE**, in light of the foregoing, this Court should vacate the judgment below, remand for a *de novo* resentencing with no sentence to be imposed on Count Four, and grant such other and further relief to defendant-appellant as it may deem just and proper.

Dated:     New York, NY
           June 16, 2025

/s/ Jonathan I. Edelstein
JONATHAN I. EDELSTEIN

49

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 32(a)(7)(C) as follows:

1.     This brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B), as modified by Second Circuit Rule 32.1(a)(4)(A), because it contains 12,340 words exclusive of those parts of the brief exempted by Fed. R. App. Pro. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 2016 in Times New Roman 14-point type.

Dated:        New York, NY
              June 16, 2025

/s/ Jonathan I. Edelstein
JONATHAN I. EDELSTEIN

AO 245B (Rev. 09/19)   Rev. EDNY 2/1/2021 Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Tyshawn Corbett | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: 20CR213 [KAM]<br><br>USM Number: 91372-053<br><br>Walter Mack, Esq.<br>Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   4, 8, and 15 of a 20 count Indictment ( not named in counts 16-20)

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 924(c)(1)(A)(iii) | Using, Carrying and Possessing a Firearm, in Connection<br>with a Crime of Violence, Class C Felony | 4/21/2015 | 4, 8, & 15 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   1-3, 5-7, and 9-14   ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/22/2024
Date of Imposition of Judgment

S/ Kiyo A. Matsumoto
Signature of Judge

Kiyo A. Matsumoto, USDJ
Name and Title of Judge

1/22/2024
Date

# Add. 1

AO 245B (Rev. 09/19)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page    2    of    7

DEFENDANT:  Tyshawn Corbett
CASE NUMBER:  20CR213 [KAM]

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a
total term of:

        On Count Four,  Mr. Corbett  shall serve a sentence of 20 years.  On Count Eight, Mr. Corbett  shall serve a
sentence of 10 years.  On Count Fifteen, Mr. Corbett  shall serve a sentence of 15 years. The sentence imposed
shall run consecutive for a total of 45 years.

☑ The court makes the following recommendations to the Bureau of Prisons:
That Mr. Corbett be designated to a facility close to the New York metro area, to facilitate family visits.
The BOP is respectfully requested to provide Mr. Corbett with intensive mental health treatment services, and he
shall avail himself of educational and/or vocational training. Mr. Corbett is encouraged to participate in the BOP's
Financial Responsibility Program that will assist him with making payments towards his assessment obligation.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at    _____ ☐ a.m.   ☐ p.m.   on   _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on   _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on   _____ to   _____

at   _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By   _____
DEPUTY UNITED STATES MARSHAL

# Add. 2

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    7

DEFENDANT:    Tyshawn Corbett
CASE NUMBER:    20CR213 [KAM]

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: 5 years on Counts 4, 8, and 15 to be served concurrently.

## MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.    ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.    ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.    ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

# Add. 3

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

Judgment—Page ____4____ of ____7____

DEFENDANT: Tyshawn Corbett
CASE NUMBER: 20CR213 [KAM]

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**Add. 4**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT: Tyshawn Corbett
CASE NUMBER: 20CR213 [KAM]

## SPECIAL CONDITIONS OF SUPERVISION

1. Mr. Corbett shall not associate in person, directly or indirectly, through mail, electronic mail, internet, social media, telephone or any other means with any individual with an affiliation to any organized crime groups, gangs or any criminal enterprise; nor shall Mr. Corbett frequent any establishment, or other locale where these groups may meet or congregate pursuant, but not limited to, a prohibition list provided by the U.S. Attorneys Office to the U.S. Probation Department.

2. Mr. Corbett shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. Mr. Corbett shall advise any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that Mr. Corbett has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

3. Mr. Corbett shall participate in a mental health treatment program, as approved by the Probation Department. He shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able to pay for treatment services, and shall cooperate in securing any applicable third-party payment. Mr. Corbett shall disclose all financial information and documents to the Probation Department to assess his ability to pay for services.

**Add. 5**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
　　　　　　　　　Sheet 5 — Criminal Monetary Penalties

| | | Judgment — Page | 6 | of | 7 |

DEFENDANT: Tyshawn Corbett
CASE NUMBER: 20CR213 [KAM]

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

　　If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ | 0.00 | $ | 0.00 |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

　　☐ the interest requirement is waived for the　☐ fine　☐ restitution.

　　☐ the interest requirement for the　☐ fine　☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# Add. 6

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
             Sheet 6 — Schedule of Payments

Judgment — Page   7   of   7  

DEFENDANT: Tyshawn Corbett
CASE NUMBER: 20CR213 [KAM]

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑   Lump sum payment of $   <u>300.00</u>   due immediately, balance due

        ☐   not later than               , or
        ☐   in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☐ F below; or

**B**  ☐   Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or   ☑ F below); or

**C**  ☐   Payment in equal            *(e.g., weekly, monthly, quarterly)* installments of $         over a period of
                 *(e.g., months or years)*, to commence          *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐   Payment in equal            *(e.g., weekly, monthly, quarterly)* installments of $         over a period of
                 *(e.g., months or years)*, to commence          *(e.g., 30 or 60 days)* after release from imprisonment to a
         term of supervision; or

**E**  ☐   Payment during the term of supervised release will commence within          *(e.g., 30 or 60 days)* after release from
         imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑   Special instructions regarding the payment of criminal monetary penalties:

         The assessment payment shall be made to:
         The Clerk of Court,
         U.S. District Court,
         225 Cadman Plaza East,
         Brooklyn, NY, 11201

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

☐   Joint and Several
The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# Add. 7